**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **YIFEI JIANG,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-878-HE** |
| | ) | |
| **CHRIS GANTT[1], et al.,** | ) | |
| | ) | |
| **Respondents.[2]** | ) | |

## REPORT AND RECOMMENDATION

Petitioner Yifei Jiang, a Chinese citizen proceeding with counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[3] (Doc. 1).[4] United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 4). In accordance with

---

[1] Chris Gantt has succeeded Dr. Scarlet Grant as Warden of Cimarron Correctional Facility. Pursuant to Federal Rule of Civil Procedure, 25(d), Mr. Gantt is automatically substituted as a Respondent in this action. The Response was not filed on behalf of Mr. Gantt because he is not a federal official. (Doc. 13, at 1). The undersigned concludes that a separate response from Warden Gantt is not necessary to resolve this matter.

[2] David Venturella was announced as Acting Director of U.S. Immigration and Customs Enforcement on June 1, 2026. He replaces Todd Lyons and is substituted as the proper respondent pursuant to Federal Rule of Civil Procedure 25(d).

[3] Petitioner is housed at Cimarron Correctional Facility in Cushing, Oklahoma. (Doc. 1, at 3).

[4] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

the expedited briefing schedule, (Doc. 11), Respondents timely filed a Response. (Doc. 13). Petitioner timely filed a Reply. (Doc. 14). For the reasons set forth below, the undersigned recommends that Petitioner be **GRANTED** habeas relief and **released from custody immediately**.

## I. Factual Background and Procedural History

Petitioner is a citizen of China who arrived at a port of entry near Savannah, Georgia, on August 12, 1999. (Doc. 13, at Ex. 2, at 1-2). The former Immigration and Naturalization Service[5] took Petitioner into custody. (*Id.*) On August 15, 1999, the government initiated removal proceedings through issuance of a Notice to Appear ("NTA") designating Petitioner as an "arriving alien" and charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lacking a valid visa/entry document and under 8 U.S.C. § 1182(a)(4)(A) for being a non-citizen likely to become a public charge. (*Id.*)

Petitioner was detained at a juvenile detention facility until February 25, 2000, when DHS released him on an Order of Recognizance subject to monthly reporting requirements. (Doc. 13, at Ex. 3). On January 9, 2001, Petitioner failed to appear for his immigration court hearing and was ordered removed to China *in absentia* pursuant to 8 U.S.C. § 1229a(b)(5)(A). (Doc. 13, at Ex. 4, at 1).

---

[5] The Immigration and Naturalization Service ("INS") ceased to exist as a separate agency in 2003, when its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (codified as amended at 6 U.S.C. §§ 251, 271, 291). For ease of reference, the undersigned hereinafter refers to the agency and its successor components as "DHS" and/or "ICE."

Petitioner subsequently filed a motion to reopen his case, which was denied by an Immigration Judge on July 24, 2001. (Doc. 13, at Ex. 5, at 1). Petitioner appealed the denial of the motion to reopen to the Board of Immigration Appeals ("BIA"). (*Id.*) On February 25, 2002, the BIA affirmed the decision of the Immigration Judge and dismissed Petitioner's appeal. (*Id.* at 2).

On March 18, 2011, Border Patrol agents encountered and arrested Petitioner near San Angelo, Texas. (Doc. 13, at Ex. 6, at 2). Petitioner was taken into ICE custody for execution of the 2001 order of removal. (Doc. 13, at Ex. 1, at 2; *Id*. at Ex. 6, at 3). On November 14, 2011, Petitioner's application for a travel document to China was denied. (Doc. 13, at Ex. 1, at 2). On December 19, 2011, ICE released Petitioner from custody on an Order of Supervision ("OOS") after determining that Petitioner's removal was not significantly likely in the reasonably foreseeable future.[6] (Doc. 13, at Ex. 1, at 2; *Id*. at Ex. 8, at 3). Petitioner alleges he has always complied with the conditions of his OOS, and Respondents do not rebut this allegation. (Doc. 1, at 7).

On August 15, 2025, United States Citizenship and Immigration Service ("USCIS") issued Petitioner a second NTA after an asylum application filed by Petitioner's spouse, on which Petitioner was listed as a rider, was referred to the immigration court. (Doc. 13, at Ex. 7, at 1; *Id*., at Ex. 8, at 3). The second NTA charges Petitioner as removable under 8

---

[6] The record does not contain the December 2011 OOS. However, the Form I-213, Record of Inadmissible/Deportable Alien, dated January 21, 2026, states that Petitioner was released in 2011 on an order of supervision "due to being NSLRRFF." (Doc. 13, at Ex. 8, at 3). This acronym is shorthand for a determination that there is "No Significant Likelihood of Removal in the Reasonably Foreseeable Future."

U.S.C. § 1182(a)(6)(A)(i) for being a non-citizen present without admission or parole. (Doc. 13, at Ex. 7, at 1). In their briefing, Respondents characterize this NTA as having been "improvidently issued." (Doc. 13, at 3; *Id*. at Ex. 1, at 2-3).

On January 20, 2026, Petitioner reported to the ICE Dallas Field Office for a routine check-in appointment in accordance with his OOS. (Doc. 1, at 2; Doc. 13, at Ex. 8, at 1-2). Officers conducting record checks determined that Petitioner was subject to a final order of removal and re-detained him. (Doc. 13, at Ex. 1, at 2). However, ICE's contemporaneous records state that "[p]er OPLA the subject's order of removal cannot be executed at this time due to his pending EOIR date." (Doc. 13, at Ex. 8, at 4).

Petitioner filed the instant Petition on April 22, 2026. (Doc. 1).

On May 26, 2026, DHS filed a motion to dismiss Petitioner's removal proceedings, which was granted by an Immigration Judge on May 27, 2026. (Doc. 13, at Ex. 1, at 3). However, Petitioner appealed the dismissal order, and the appeal remains pending.[7]

In his declaration, ICE Deportation Officer George McGettrick attests that "[o]n May 28, 2026, Notification was sent to Cimarron contact officers to have [Petitioner] fill out the travel document application and China identity verification form." (Doc. 13, at Ex. 1, at 3). Officer McGettrick contends that he believes Petitioner's removal to China is "significantly likely in the reasonably foreseeable future" because of "China's willingness to accept its citizens and the number of successful removals ERO has made to China the past two Fiscal Years." (*Id.*)

---

[7] *See* EOIR Automated Case Information System, acis.eoir.justice.gov/en/caseInformation (last visited Aug. 12, 2026).

Petitioner has been in ICE custody since January 20, 2026, and is currently detained at the Cimarron Correctional Facility in Cushing, Oklahoma.[8] (Doc. 13, at Ex. 1, at 3).

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises four grounds for relief: (1) he asserts his continued detention violates his Fifth Amendment substantive and procedural due process rights, (Doc. 1, at 12-14); (2) he asserts Respondents violated the Administrative Procedure Act, 5 U.S.C. § 706(2), by revoking his OOS without following agency regulations, (*id*. at 14-15); (3) he contends Respondents violated the Immigration and Nationality Act ("INA") and its implementing regulations[9] by revoking his OOS and re-detaining him (a) without an individualized determination that circumstances have changed such that Petitioner's removal is significantly likely in the reasonably foreseeable future and (b) without providing Petitioner notice and an opportunity to be heard, (*id.* at 15-16); and (4) he seeks a declaratory judgment under 28 U.S.C. § 2201 that the INA, its regulations, and the Due Process Clause require such determinations and procedures before revocation and re-detention, (*id.* at 16-17).

---

[8] *See* ICE Detainee Locator, locator.ice.goc/odls/#/results (last visited August 12, 2026).

[9] The Petition's legal framework section identifies 8 C.F.R. § 241.13 as the operative revocation regulation, (*see* Doc. 1, at 8-9), however in other sections of the Petition, he cites to 8 C.F.R. § 241.4(l), (*see id*. at 15, 16). The two provisions govern different release mechanisms and prescribe different procedures for revocation. The substance of Petitioner's allegations tracks the revocation provisions of 8 C.F.R. § 241.13(i)(1)-(3), and the undersigned construes the Petition accordingly. As discussed below, the record establishes Petitioner's OOS was issued pursuant to § 241.13, making § 241.13(i) the applicable revocation provision.

Petitioner requests his immediate release, or in the alternative an individualized bond hearing before an Immigration Judge at which Respondents bear the burden of justifying continued detention, as well as additional injunctive and declaratory relief, including a restraint on Respondents' transfer of him to another detention facility. (*Id.* at 1, 17). Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. (*Id.* at 17).[10]

Respondents contend the Petition should be dismissed and principally argue: (1) the Petition fails to establish a *prima facie* claim under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Petitioner has not demonstrated that there was no significant likelihood of his removal in the reasonably foreseeable future, (Doc. 13, at 8); (2) even if Petitioner had met his burden, Respondents have rebutted any such showing by providing statistics regarding the increase in removals of Chinese citizens between Fiscal Years 2024 and 2025, (*id.* at 9); (3) Petitioner's failure to establish a *Zadvydas* claim negates his substantive due process claim, (*id.* at 9-10); and (4) Respondents have complied with the INA and its regulations, (*id*. at 10).[11] Respondents also suggest, in a footnote, that the Court lacks jurisdiction under

[10] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B). Thus, the Court need not address this request at this juncture.

[11] The Response also characterizes Petitioner as claiming that ICE intends to remove him "to Equatorial Guinea, despite the Immigration Judge's withholding of removal under INA § 241(b)(3) and the Convention Against Torture ('CAT')." (Doc. 13, at 2). Petitioner raises no such claim, has never been granted withholding of removal, and has no apparent connection to Equatorial Guinea. This passage appears to have been carried over from

8 U.S.C. § 1252(g) to review the decision to execute Petitioner's removal order. (*Id.* at 2 n.2).

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas*, 533 U.S. at 687; *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## IV. Legal Framework for the Detention or Release of Aliens Subject to a Final Order of Removal

As will be explained below, Petitioner has a final order of removal, meaning that his detention is governed by 8 U.S.C. § 1231(a). Under that statute, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." *Id.* § 1231(a)(1)(A). This 90-day period is known as the "removal period." *Id.* The removal period begins on the latest of: (1) date that the order of removal becomes administratively final, (2) the date of the court's final order when a removal order is judicially reviewed, or (3) the date the non-citizen is released from

briefing in an unrelated matter. Counsel is reminded of the obligation to ensure that factual and legal contentions are tailored to the case at hand. *See* Fed. R. Civ. P. 11(b).

detention or confinement if detained, unless the non-citizen is confined under immigration processes. *Id*. § 1231(a)(1)(B). During the removal period, non-citizens are subject to mandatory detention. *Id*. § 1231(a)(2)(A).

When a non-citizen's removal period lapses, he generally must be released subject to supervision. *See* § 1231(a)(3). However, DHS retains the discretion to continue the detention of certain non-citizens after the removal period, including criminal aliens. *See* § 1231(a)(6); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-579 (2022) ("After the removal period expires, the Government may detain only four categories of people (1) those who are inadmissible on certain specified grounds; (2) those who are removable on certain specified grounds; (3) those it determines to be a risk to the community; and (4) those it determines to be unlikely to comply with the order of removal."). Continued detention under § 1231(a)(6) triggers the 'post-removal period.' *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021).

The detention of a non-citizen subject to a final order of removal may not be indefinite and is presumptively reasonable for only six months. *Zadvydas*, 533 U.S. at 701. Federal regulations require ICE to release a non-citizen ordered removed from the United States under an OOS if there is no significant likelihood that the non-citizen will be removed in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(g)–(h); *see also Zadvydas*, 533 U.S. at 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by law.").

"Once ICE releases a non-citizen on an Order of Supervision, ICE's ability to re-detain that non-citizen is constrained by its own regulations." *Roble v. Bondi*, 803 F. Supp.

3d 766, 771 (D. Minn. 2025). As relevant here, after ICE releases a non-citizen on an OOS, federal immigration officials may later revoke his OOS and return the non-citizen to custody if he violates conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Such revocation triggers a notification and review process:

> **Revocation procedures**. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. [ICE] will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

*Id.* § 241.13(i)(3).

## V. Analysis

### A. The Court Has Jurisdiction To Hear Petitioner's Claims Regarding ICE's Revocation of his OOS.

Respondents suggest in a footnote that the Court "does not have jurisdiction to review the Attorney General's decision to execute Petitioner's removal order" under 8 U.S.C. § 1252(g). (Doc. 13, at 2 n.2). To the extent Respondents intend this argument to reach Petitioner's challenge to his re-detention, the undersigned disagrees.

Judges in this District have previously rejected Respondents' jurisdictional arguments and should do the same here. *See, e.g.*, *Cao v. Bondi*, No. CIV-25-1403-G, 2026 WL 637617, at *3 (W.D. Okla. Mar. 6, 2026) (concluding the Court's "ability to consider the petition is not barred by § 1252(g)" as the petitioner was "not seeking review of the Executive's decision to execute an order of removal" but rather arguing "he is detained in

violation of the INA because Respondents failed to comply with the applicable regulations prior to re-detaining him after he was previously released on an OOS") (citation modified); *Nguyen v. Bondi,* No. CIV-25-1402-D, 2026 WL 396548, at *4 (W.D. Okla. Feb. 12, 2026) ("The Court agrees with the magistrate judge's finding that neither 8 U.S.C. § 1252(b)(9) nor § 1252(g) deprives the Court of jurisdiction here."); *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *1 (W.D. Okla. Mar. 20, 2026); *Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382 at * 2 (W.D. Okla. June 25, 2026) (collecting cases).

Here, Petitioner does not challenge the underlying merits of the removal. Rather, he contends ICE unlawfully revoked his OOS, rendering his detention unlawful. Accordingly, the Court should find it has jurisdiction to consider the Petition.

### B. Petitioner's Is Subject to an Administratively Final Order of Removal and His Re-Detention Is Governed by 8 U.S.C. § 1231(a)(6).

The undersigned must discern the statutory authority governing Petitioner's present detention. The answer depends on whether Petitioner is subject to a final order of removal, and if so, the date of the order's finality. *See Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018) (clarifying § 1231(a) supplies DHS's detention authority once a non-citizen is subject to a final removal order).

Without specifying which statute they believe governs Petitioner's re-detention, Respondents take the position that Petitioner's removal order is not final. Specifically, Respondents argue Petitioner's "post-order detention will begin when his removal order

becomes final" and that the order "became final on May 27, 2026."[12] (Doc. 13, at 8). Per Respondents, "the detention clock for purposes of these proceedings has not begun." (*Id.*) The undersigned finds Respondents' arguments to be undeveloped and unpersuasive. The undersigned concludes that Petitioner is subject to a final order of removal and that the removal period has lapsed, meaning that Petitioner's re-detention is governed by the post-order detention provision of § 1231(a)(6).

On January 9, 2001, an Immigration Judge ordered Petitioner removed *in absentia* under 8 U.S.C. § 1229a(b)(5)(A). Under this provision, if a non-citizen fails to appear for his removal hearing, an Immigration Judge will issue an order of removal if the government "establishes by clear, unequivocal, and convincing evidence" that the non-citizen is removable and that the non-citizen was provided written notice of the hearing. *See* 8 U.S.C. § 1229a(b)(5)(A). An *in absentia* removal order cannot be directly appealed to the BIA and may be rescinded only upon the granting of a motion to reopen, which never occurred here. *See id.* § 1229a(b)(5)(C). Petitioner's removal order was thus final upon issuance.[13]

---

[12] Respondents' briefing on this point states that "[t]he final order of detention became final on May 27, 2026." (Doc. 13, at 8). The undersigned construes this as a reference to the final order of removal. As previously noted, on May 28, 2026, Petitioner appealed the Immigration's Judge's order dismissing his removal proceedings, which remains pending. Respondents filed their Response on the same date and appear to have been unaware of the appeal at the time of filing. The undersigned presumes that Respondents' position remains that Petitioner's removal order will become final when/if his removal proceedings are dismissed.

[13] An order of removal is final "at the earlier of two points: (1) a determination by the [BIA] affirming such order, or (2) the expiration of the period in which the alien is permitted to petition the BIA for review of the order." *Riley v. Bondi*, 606 U.S. 259, 267 (2025) (citing § 1101(a)(47)(B)).

The 90-day removal period and mandatory detention under § 1231(a)(2) started on January 10, 2001, and lapsed 90 days later, on April 10, 2001. *See* § 1231(a)(1)(B)(i). Thus, Petitioner entered the post-removal period on April 11, 2001, meaning that any detention after that date is governed by § 1231(a)(6). This conclusion is reinforced by the fact that Petitioner was released from ICE detention in 2011 on an OOS.

The only remaining question is whether the finality of Petitioner's 2001 removal order was disturbed when USCIS placed Petitioner in removal proceedings on August 15, 2025. It was not. Issuance of a charging document under 8 U.S.C. § 1229a and the initiation of removal proceedings, does not, by itself, rescind or vacate a final order of removal. *See Riley*, 606 U.S. at 269 (explaining that a final order of removal remains final when withholding-only proceedings are initiated).

Congress specified that an *in absentia* removal order can only be rescinded when a motion to reopen is granted. Petitioner's motion to reopen was denied, and the BIA dismissed his appeal from that denial. (Doc. 13, at Ex. 5, at 1-2). Respondents' argument that the order will become final only upon the dismissal of the removal proceedings initiated in August of 2025 inverts the statutory scheme. The removal order has been final since January 9, 2001, and nothing in 8 U.S.C. § 1229a permits a charging document, issued in error or not, to unwind that finality. Respondents themselves describe the NTA as "improvidently issued" and moved to dismiss the new proceedings precisely so that ICE could "process [Petitioner] for removal" under the existing order. (Doc. 13, at Ex. 1, at 2-3). Thus, Respondents' strategy presupposes that Petitioner has an extant order of removal, and that his removal can be effected in accordance with that original order. Accordingly,

the undersigned concludes that Petitioner is subject to a final order of removal and is in the post-removal period, meaning that he is necessarily detained under § 1231(a)(6).

**C. Petitioner's OOS was Issued Under 8 C.F.R. 241.13.**

Next, it must be determined whether Petitioner's OOS was issued pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, as each regulation contains distinct provisions governing revocation. *See, e.g.*, *Bui*, 2026 WL 788947, at *2 ("First, the Court is tasked with determining whether § 241.4 or § 241.13 applies. Although both regulations include provisions permitting Respondents to revoke an individual's Order of Supervision, there may be materially distinct requirements depending on which regulation applies."); *Grigorian v. Bondi*, No. 25-CV-22914, --- F. Supp. 3d ----, 2025 WL 2604573, at *5 (S.D. Fla. Sept. 9, 2025) ("Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.").

Unlike in other recent cases in this District, no inference is required here. Respondents' own records state Petitioner "was previously released from ICE Custody on OSUP due to being NSLRRFF." (Doc. 13, at Ex. 8, at 3). That is, ICE released Petitioner in December 2011 after determining there was no significant likelihood of his removal in the reasonably foreseeable future, a determination consistent with the denial of his travel document application the preceding month. (*Id.* at Ex. 1, at 2). Petitioner asserts that his OOS was issued under § 241.13. *See supra* n.9. Respondents do not dispute that characterization or identify an alternative regulatory basis for his release. Thus, the

undersigned concludes that Petitioner's OOS was issued under § 241.13(g), and § 241.13(i) governs its revocation.

**D. Respondents Failed to Comply With the Notice and Interview Requirements in § 241.13(i)(3).**

Petitioner alleges Respondents failed to comply with the INA and ICE's applicable regulations before re-detaining him after his prior release on an OOS. (Doc. 1, at 15-16). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

Under § 241.13(i), an order of supervision may be revoked in two circumstances: (1) where the non-citizen "violates any of the conditions of release," § 241.13(i)(1); or (2) where, based on "changed circumstances," ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future, § 241.13(i)(2). *See Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026). Respondents do not allege Petitioner violated any conditions of release, so they must rely solely on the "changed circumstances" prong as the justification for revocation.

When a non-citizen's OOS has been revoked pursuant to § 241.13(i)(1) or § 241.13(i)(2), subsection (i)(3) provides that, "[u]pon revocation," the non-citizen "will be notified of the reasons for revocation" and afforded an informal interview. § 241.13(i)(3).

*See Tran*, 2026 WL 1181700, at *2 ("Revocation for either reason triggers a notification requirement and a review process."). "By mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment." *Li v. Bondi*, No. CIV-25-1480-J, 2026 WL 475133, at *3 (W.D. Okla. Feb. 19, 2026).

The undersigned concludes that when ICE re-detained Petitioner, ICE failed to give him proper notice or a prompt informal interview, as required by § 241.13(i)(3). The McGettrick Declaration does not indicate that Petitioner was provided with any written Notice of the Revocation of his OOS or afforded an informal interview when he was taken into ICE custody or at any time during his detention. (Doc. 13, at Ex. 1). The Declaration states only that ICE determined Petitioner "was unlawfully present in the United States with a prior order of removal" and took him into custody. (*Id.* at 2). In fact, Respondents' briefing does not address § 241.13(i)(3) at all.[14] Accordingly, the undersigned finds that Respondents failed to comply with their own notice and interview requirements for revocation of the OOS.

[14] Respondents' briefing addresses Petitioner's regulatory claim in two sentences, neither of which cites to 8 C.F.R. § 241.13, acknowledges the revocation of Petitioner's OOS, or engages with the substantial body of authority from this District addressing re-detention following release under that regulation. (Doc. 13, at 10). Respondents claim to have complied with the INA and its regulations, but they fail to provide any evidence in support of this conclusory statement. (*Id.*)

**E. Respondents Failed to Establish Changed Circumstances as Required by § 241.13(i)(2).**

The undersigned further finds Respondents have not met their burden to show they determined there were "changed circumstances" such that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2). "[T]he burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding it was burden of ICE to demonstrate substantial likelihood of removal in the reasonably foreseeable future existed at the time of re-detention); *Roble*, 803 F. Supp. 3d at 772-73; *Escalante v. Noem*, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150-51 (D. Mass. 2025).

In determining whether removal is significantly likely in the reasonably foreseeable future, the regulations specify that ICE should consider several factors including the non-citizen's efforts to comply with the removal order; the history of ICE's efforts to remove individuals to the destination country or to third countries; the ongoing nature of ICE's efforts to remove the particular non-citizen and his assistance with those efforts; the reasonably foreseeable results of those efforts; and the views of the Department of State regarding the prospects for removal to the countries in question. 8 C.F.R. § 241.13(f).

Here, the record shows that ICE failed to make any individualized determination of changed circumstances prior to re-detaining Petitioner. ICE's own records affirmatively

refute any contemporaneous determination that removal was significantly likely: at the time of Petitioner's arrest, ICE recognized it "could not begin to process [Petitioner] for removal until proceedings were dismissed," and its records state that "[p]er OPLA the subject's order of removal cannot be executed at this time." (Doc. 13, at Ex. 1, at 2-3; *Id.* at Ex. 8, at 4). Whatever the merit of that position, Respondents cannot simultaneously maintain that Petitioner's removal was significantly likely in the reasonably foreseeable future while their records state his removal order could not be executed at all. Removal that ICE itself deemed unavailable at the moment of re-detention is the antithesis of removal that is significantly likely in the reasonably foreseeable future.

The only removal efforts reflected in the record occurred months after Petitioner's re-detention. In May of 2026, more than four months after taking Petitioner into custody, ICE sent a notification to Cimarron contact officers "to have [Petitioner] fill out the travel document application and China identity verification form." (Doc. 13, at Ex. 1, at 3). Respondents do not assert the application has been completed, submitted to the Chinese government, or acted upon in any way.

Respondents also do not claim that ICE made any effort to secure travel documents <u>prior</u> to Petitioner's re-detention. Travel documents requested and/or received <u>after</u> the revocation of release do not constitute changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation. *See e.g. Duong v. Charles*, No. 1:25-cv-1375 SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025); *Sphabmixay v. Noem*, No. 25CV2648 LL VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025).

Indeed, when travel documents are requested after revocation of release, courts have granted the petition for writ of habeas corpus and ordered petitioner's immediate release, even if travel documents were subsequently secured. "The question . . . is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his [OOS] was revoked." *Munagi v. McDonald*, 813 F. Supp. 3d 225, 229 (D. Mass. 2025) (granting petitioner's release, despite the fact that the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until *after* petitioner's release had been revoked). "Section § 241.13(i)(2) requires a pre-arrest, individualized determination 'on account of changed circumstances' that removal is reasonably foreseeable. A decision to revoke that lacks a supporting factual basis, perhaps in hopes that such a basis will be identified post-hoc, violates the regulatory scheme." *Pham v. Warden*, No. 1:25-CV-1873 DC AC, 2026 WL 673404, at *10 (E.D. Cal. Mar. 10, 2026), *report and recommendation adopted*, 2026 WL 849861 (E.D. Cal. Mar. 27, 2026). *See also Duong*, 2025 WL 3187313, at *3, *5-6 (granting petitioner's writ and ordering his immediate release, despite the fact that the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month *after* petitioner's release had been revoked); *Sarail A.*, 803 F. Supp. 3d at 788-89 (granting writ of habeas corpus and releasing petitioner after concluding that respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice").

Moreover, merely requesting travel documents is also insufficient to establish that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. *See Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sep. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future.").

Finally, Respondents' reliance on an increase in removals to China from 2024 to 2025 is insufficient to meet their burden. "Courts have found that . . . increase in frequency of removals alone does not demonstrate significant likelihood of removal in the reasonably foreseeable future," in part because it does not "provide[] . . . evidence of progress . . . made towards removal of Petitioner *himself* before re-detention." *Pham*, 2025 WL 3243870, at *2 (emphasis added); *see also Cao*, 2026 WL 637617, at *5 ("[A] general indication that removals to Vietnam were likely because removals were occurring more frequently in 2025 than in recent years . . . does not satisfy the § 241.13(i)(2) determination of a significant likelihood that *the* alien may be removed . . . .") (internal quotation marks omitted).

In sum, the record before the Court establishes that ICE failed to make an individualized determination regarding the significant likelihood of Petitioner's removal based on changed circumstances prior to Petitioner's re-detention as required by § 241.13(i)(2).

**F. ICE's Failure To Abide by its Regulations Warrants Habeas Relief in the Form of Immediate Release.**

A majority of district courts have granted habeas relief in similar circumstances finding that "fail[ure] to comply with § 241.13(i)(2) in establishing a change of circumstances that demonstrated a significant likelihood of removal in the reasonably foreseeable future at the time of Petitioner's re-detention" or "not providing the Petitioner with written notice of the reasons for his revocation" under § 241.13(i)(3) "amounts to a due process violation, entitling the petitioner to habeas relief." *See, e.g.*, *Pham*, 2025 WL 3243870, at *1 (collecting cases); *Ye v. Bondi,* No. CIV-25-1230-D, 2025 WL 3485420, at *2 (W.D. Okla. Dec. 4, 2025) (same); *Nguyen v. Bondi*, No. CIV-26-0056-HE, 2026 WL 1034405, at *1 (W.D. Okla. Apr. 16, 2026) ("[T]he court joins the majority view, that the 'regulatory defects amount to due process violations that entitled a petitioner to habeas relief.'") (quoting *Pham*).

Based on the facts and circumstances of this case, the undersigned concludes that Respondents' violation of §§ 241.13(i)(2) and (i)(3) denied Petitioner the process to which he was entitled by law and that such a denial entitles Petitioner to habeas relief. *See Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1495209 (W.D. Okla., May 28, 2026) (distinguishing *Bahadorani*, rejecting the argument that Respondents' failure to

comply with § 241.13(i)(3) constitutes a harmless error, and granting habeas relief in factually similar circumstances); *Hamidi*, 2025 WL 3452454, at *4 (granting habeas relief where respondents failed to satisfy § 241.13(i)(2)).

Therefore, because ICE violated its own regulations, the undersigned concludes that Petitioner's detention is unlawful and his immediate release is appropriate under 28 U.S.C. § 2241(c)(3).

**VI. This Court Lacks Jurisdiction To Prohibit Petitioner's Transfer.**

Petitioner requests that the Court enjoin Respondents "from transferring Petitioner to another detention facility." (Doc. 1, at 17). This Court cannot grant such relief.

Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Id*. (citation modified). The decision regarding where to detain non-citizens awaiting removal proceedings is a discretionary power of the Secretary of DHS. Under 8 U.S.C. § 1231(g)(1), ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." The Tenth Circuit has confirmed "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal." *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"). Accordingly, § 1252(a)(2)(B)(ii) also bars judicial review of any decision by Respondents to transfer Petitioner to another ICE

facility. *See, e.g., Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"); *Olola v. U.S. Att'y Gen*., No. 18-CV-00058-GPG, 2018 WL 11446892, at *4 (D. Colo. Feb. 22, 2018) (finding § 1252(a)(2)(B)(ii) and § 1231(g) preclude judicial review of respondents' decision to transfer a noncitizen and "decisions to transfer an alien from one location to another are within the discretion of the Attorney General and therefore may not be reviewed or enjoined by the federal district courts").

Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

**VII. The Court Should Decline to Address Petitioner's Remaining Claims.**

Because the undersigned recommends that the Court grant the Petition after finding ICE violated its own regulations in revoking Petitioner's OOS and re-detaining him, the Court should decline to address his remaining claims. *See Ye*, 2025 WL 3485420, at *2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on the regulatory violation); *see also Hamidi,* 2025 WL 3452454, at *2 n.2 (same). Further, considering the recommended relief, the Court need not address Petitioner's other requests for injunctive and declaratory relief.

## VIII. Recommended Ruling and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.** The undersigned recommends that the Court order Respondents **to release Petitioner from custody immediately**, subject to an appropriate OOS. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned further recommends that the Court order Respondents to certify compliance by filing a status report within three business days of the Court's order.

**The court advises the parties of their right to object to this Report and Recommendation by August 19, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[15] The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and

---

[15] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 12th day of August, 2026.

Amanda L. Maxfield

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE